1
2
3                                                    THE HONORABLE _____
4
5
6
7
8
9
10
11
12                    UNITED STATES DISTRICT COURT
13                   WESTERN DISTRICT OF WASHINGTON
14                            AT SEATTLE
15
16
17   DOMAIN NAME COMMISSION            No. 2:18-cv-874
     LIMITED,
18                                     DOMAIN NAME COMMISSION
19                                     LIMITED'S MOTION FOR PRELIMINARY
                        Plaintiff,     INJUNCTION
20
21          v.                         NOTE ON MOTION CALENDAR:
22                                     Friday, July 13, 2018
     DOMAINTOOLS, LLC
23                                     ORAL ARGUMENT REQUESTED
24                        Defendant.
25
26
27
28
29
30
31
32
33
34
35
36
37
38
39
40
41
42
43
44
45
46
47
48
49
50
51

DNCL'S MOTION FOR PRELIMINARY                    **Perkins Coie** LLP
INJUNCTION (NO. 2:18-CV-874)                1201 Third Avenue, Suite 4800
                                            Seattle, WA  98101-3099
139655561.8                                   Phone:  206.359.8000
                                               Fax:  206.359.9000

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
33
34
35
36
37
38
39
40
41
42
43
44
45
46
47
48
49
50
51

## **TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................... 1

II.     STATEMENT OF FACTS ..................................................................................... 2

        A.      Domain Name Background and Terminology ...................................... 2

        B.      DNCL and the .nz WHOIS terms of use ............................................ 4

        C.      DomainTools and the present dispute .................................................. 6

III.    ARGUMENT .......................................................................................................... 7

        A.      DNCL is entitled to a preliminary injunction enjoining DomainTools's
                unlawful activities ....................................................................................... 7

                1.      DNCL is likely to succeed on the merits of its claims ................. 7

                        a.      DNCL is likely to succeed on its claim that DomainTools
                                breached DNCL's terms of use ......................................... 8

                        b.      DNCL is likely to succeed on its claim that DomainTools
                                violated the Computer Fraud and Abuse Act .................. 12

                        c.      DNCL is likely to succeed on its claim that DomainTools
                                violated the Washington Unfair Competition Law ......... 13

                2.      DNCL is currently suffering and will continue to suffer irreparable
                        harm without a preliminary injunction ..................................... 16

                        a.      DomainTools is causing irreparable harm to DNCL's
                                reputation and goodwill by depriving IRPO registrants of the
                                privacy protection DNCL promised them ........................ 16

                        b.      DomainTools is causing DNCL to suffer irreparable harm to
                                its reputation and goodwill because .nz registrants are not
                                receiving the general protections promised in the TOU ...... 18

                        c.      DomainTools is causing DNCL irreparable harm because it
                                will be forced to divert internal resources away from its
                                organizational mission to police and prevent DomainTools's
                                unauthorized activity ...................................................... 20

                3.      The balance of equities tips sharply towards DNCL .................. 21

                4.      A preliminary injunction is in the public interest .................... 22

        B.      No bond should be required ................................................................. 24

IV.     CONCLUSION ................................................................................................... 25

DNCL'S MOTION FOR PRELIMINARY
INJUNCTION (NO. 2:18-CV-874)  – i

139655561.8

# TABLE OF AUTHORITIES

CASES

*adidas Am., Inc. v. Skechers USA, Inc.*,
  890 F.3d 747 (9th Cir. 2018) ........................................................................17

*All. for the Wild Rockies v. Cottrell*,
  632 F.3d 1127 (9th Cir. 2011) .......................................................................22

*All. For the Wild Rockies v. Pena*,
  865 F.3d 1211 (9th Cir. 2017) ...............................................................6, 8, 22

*Berkson v. Gogo LLC*,
  97 F. Supp. 3d 359 (E.D.N.Y. 2015) ...............................................................9

*Boardman v. Pac. Seafood Grp.*,
  822 F.3d 1011 (9th Cir. 2016) .......................................................................23

*Cal. ex rel. Van De Kamp v. Tahoe Reg'l Planning Agency*,
  766 F.2d 1319 (9th Cir. 1985) .......................................................................25

*Caribbean Marine Servs. Co. v. Baldrige*,
  844 F.2d 668 (9th Cir. 1988) .........................................................................16

*Craigslist Inc. v. 3Taps Inc.*,
  942 F. Supp. 2d 962 (N.D. Cal. 2013) ...........................................................13

*Disney Enters., Inc. v. VidAngel, Inc.*,
  869 F.3d 848 (9th Cir. 2017) .........................................................................17

*Ehling v. Monmouth-Ocean Hosp. Serv. Corp.*,
  961 F. Supp. 2d 659 (D.N.J. 2013) ................................................................15

*Facebook, Inc. v. Power Ventures, Inc.*,
  844 F.3d 1058 (9th Cir. 2016), *cert denied*, 138 S. Ct. 313 (2017).........................13

*Facebook, Inc. v. Power Ventures, Inc.*,
  No. C 08-5780 JF (RS), 2009 WL 1299698 (N.D. Cal. May 11, 2009)...................................9

*Fed. Trade Comm'n v. Sperry & Hutchinson Co.*,
  405 U.S. 233 (1972)........................................................................................14

*Garcia v. Google, Inc.*,
  786 F.3d 733 (9th Cir. 2015) (en banc) ...........................................................8

DNCL'S MOTION FOR PRELIMINARY
INJUNCTION (NO. 2:18-CV-874)  – ii

**Perkins Coie** LLP
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

139655561.8

# TABLE OF AUTHORITIES
### (continued)

*Herb Reed Enters., LLC v. Fla. Entm't Mgmt., Inc.*,
   736 F.3d 1239 (9th Cir. 2013) ...................................................................................17

*hiQ Labs, Inc. v. LinkedIn Corp.*,
   273 F. Supp. 3d 1099 (N.D. Cal. 2017), *appeal docketed*, No. 17-16783 (9th
   Cir. Sept. 6, 2017)....................................................................................................13

*Klem v. Wash. Mut. Bank*,
   176 Wn.2d 771 (2013) ..............................................................................................14

*L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*,
   634 F.2d 1197 (9th Cir. 1980) ..................................................................................21

*Magney v. Lincoln Mut. Sav. Bank*,
   34 Wn. App. 45 (1983) ..............................................................................................14

*McKee v. Audible, Inc.*,
   No. CV 17-1941-GW(Ex), 2017 WL 4685039 (C.D. Cal. July 17, 2017) ...............9

*Michael v. Mosquera-Lacy*,
   165 Wn.2d 595 (2009) ..............................................................................................15

*Nguyen v. Barnes & Noble Inc.*,
   763 F.3d 1171 (9th Cir. 2014) ................................................................................8, 9

*Nordstrom, Inc. v. Tampourlos*,
   107 Wn.2d 735 (1987).........................................................................................15, 16

*Nw. Indep. Forest Mfrs. v. Dep't of Labor & Indus.*,
   78 Wn. App. 707 (1995) ..............................................................................................8

*Perfect 10, Inc. v. Google, Inc.*,
   653 F.3d 976 (9th Cir. 2011) ....................................................................................22

*Rajagopalan v. NoteWorld, LLC*,
   No. C11-05574BHS, 2012 WL 727075 (W.D. Wash. Mar. 6, 2012), *aff'd*, 718
   F.3d 844 (9th Cir. 2013) ...........................................................................................15

*Ramos v. Arnold*,
   141 Wn. App. 11, 20 (2007) ......................................................................................15

*Regents of University of Cal. v. Am. Broad. Cos., Inc.*,
   747 F.2d 511 (9th Cir. 1984) ....................................................................................20

DNCL'S MOTION FOR PRELIMINARY
INJUNCTION NO. (2:18-CV-874) – iii

**Perkins Coie** LLP
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

139655561.8

## TABLE OF AUTHORITIES
### (continued)

*Register.com, Inc. v. Verio, Inc.*,
   356 F.3d 393 (2d Cir. 2004).....................................................................................9, 19, 20

*Rent-A-Ctr., Inc. v. Canyon Television & Appliance Rental, Inc.*,
   944 F.2d 597 (9th Cir. 1991) ................................................................................................16

*Schnall v. AT&T Wireless Servs. Inc.*,
   171 Wn.2d 260 (2011) ...........................................................................................................15

*Senate of Cal. v. Mosbacher*,
   968 F.2d 974 (9th Cir. 1992) ..................................................................................................8

*Shamrock Foods Co. v. Gast*,
   535 F. Supp. 2d 962 (D. Ariz. 2008) ....................................................................................12

*Shell Offshore, Inc. v. Greenpeace, Inc.*,
   709 F.3d 1281 (9th Cir. 2013) ................................................................................................8

*Stormans, Inc. v. Selecky*,
   586 F.3d 1109 (9th Cir. 2009) ..............................................................................................23

*Ticketmaster L.L.C. v. Prestige Entm't, Inc.*,
   __ F. Supp. 3d __, No. 2:17-CV-07232 ODW, 2018 WL 654410 (C.D. Cal.
   Jan. 31, 2018) .......................................................................................................................13

*Ticketmaster L.L.C. v. RMG Techs., Inc.*,
   507 F. Supp. 2d 1096 (C.D. Cal. 2007) ....................................................................9, 17, 18

*Triad Sys. Corp. v. Se. Express Co.*,
   64 F.3d 1330 (9th Cir. 1995) ................................................................................................22

*United States v. Devers*,
   No. 12-CR-50-JHP, 2012 WL 12540235 (N.D. Okla. Dec. 28, 2012)...................................15

*United States v. Nosal*,
   676 F.3d 854 (9th Cir. 2012) ................................................................................................12

*Valle del Sol Inc. v. Whiting*,
   732 F.3d 1006 (9th Cir. 2013) ..............................................................................................21

*Van Tassell v. United Mktg. Grp., LLC*,
   795 F. Supp. 2d 770 (N.D. Ill. 2011) ....................................................................................8

**Perkins Coie** LLP
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

# TABLE OF AUTHORITIES
**(continued)**

*Veridian Credit Union v. Eddie Bauer, LLC,*
 295 F. Supp. 3d 1140 (W.D. Wash. 2017)...............................................................15

*Winter v. Nat. Res. Def. Council, Inc.,*
 555 U.S. 7 (2008)................................................................................ passim

**STATUTES**

15 U.S.C. § 45(n) ............................................................................................14

18 U.S.C. § 1030(e)(11) ..................................................................................13

18 U.S.C. §§ 1030(g) ......................................................................................12

Computer Fraud and Abuse Act ...........................................................1, 12, 13

Consumer Protection Act .................................................................................15

Digital Millennium Copyright Act..................................................................17

RCW 19.86.010(2).........................................................................................15

Stored Communications Act ............................................................................15

Washington Consumer Protection Act..............................................................1

Washington Unfair Competition Law...............................................................14

**OTHER AUTHORITIES**

Black's Law Dictionary (10th ed. 2014)........................................................11

Federal Rule of Civil Procedure 65 .............................................................2, 25

DNCL'S MOTION FOR PRELIMINARY
INJUNCTION NO. (2:18-CV-874) – v

139655561.8

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
33
34
35
36
37
38
39
40
41
42
43
44
45
46
47
48
49
50
51

## I.    INTRODUCTION

At issue in this case is the right of organizations who provide information online to define and enforce the terms and conditions by which that information can be accessed and used. Plaintiff Domain Name Commission Limited ("DNCL") is a non-profit organization based in New Zealand. Its responsibilities include regulating the use of the .nz WHOIS service, which responds to user queries by providing information about the registrants who license and use .nz domain names. DNCL fulfills this responsibility by promulgating and enforcing the .nz WHOIS Terms of Use ("TOU"), which are designed to control the dissemination of personal information and protect the privacy of .nz registrants by ensuring that only current .nz WHOIS information can be accessed and by preventing registrant details from being harvested in bulk.

Defendant DomainTools, LLC ("DomainTools") engages in conduct that violates the TOU so that it can sell .nz registrants' personal information. The TOU prohibit "send[ing] high volume WHOIS queries with the effect of downloading part or all of the .nz Register or collecting register data or records" and "[s]toring or compil[ing] WHOIS data to build up a secondary register of information." Decl. of Brent Carey in Supp. of Mot. for Prelim. Inj. ("Carey Decl.") at Ex. 5. Yet DomainTools has compiled a database that, by its own admission, is "unparalleled" in size and coverage—and thus could only have been created using high volume queries. Decl. of Todd M. Hinnen in Supp. of Mot. for Prelim. Inj. ("Hinnen Decl.") at Ex. 1. The TOU also prohibit "publish[ing] historical or non-current versions of WHOIS data" and "publish[ing] any WHOIS data in bulk." Carey Decl. at Ex. 5. Yet DomainTools offers a "Whois History" service allowing customers to access historical WHOIS records and a "Reverse Whois" service allowing customers to search bulk records by keyword (i.e., by registrant name).

This conduct not only constitutes a willful, ongoing breach of the TOU, it also violates the Computer Fraud and Abuse Act and the Washington Consumer Protection Act.

DomainTools's publication in bulk and sale of .nz registrants' personal information is irreparably harming DNCL's reputation and goodwill by preventing DNCL from enforcing its

DNCL'S MOTION FOR PRELIMINARY
INJUNCTION (NO. 2:18-CV-874)   – 1

139655561.8

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

TOU, honoring its promises to .nz registrants, and protecting the privacy and safety of .nz registrants. It is also diverting DNCL's limited resources away from its organizational mission.

Finally, the balance of equities, as well as the public interest, weigh heavily in favor of preliminary injunctive relief. DomainTools and its customers face the prospect of only minor loss of profit and inconvenience if relief is granted. Conversely, if relief is not granted, DNCL will be unable to offer its services in accordance with the TOU, unable to implement policies supported by the people and businesses of New Zealand and other .nz registrants, and unable to honor individual registrants' choice to limit access to their personal information.

DNCL therefore moves this Court, pursuant to Federal Rule of Civil Procedure 65, for an order preliminarily enjoining DomainTools from obtaining and using .nz WHOIS records in violation of the TOU. Specifically, DNCL asks that DomainTools be enjoined from (1) accessing the .nz Register *at all* so long as its limited license remains revoked; or, in the alternative, sending automated, high-volume WHOIS queries and accessing the .nz Register in bulk in violation of the TOU; (2) storing or compiling .nz WHOIS data in its own database; (3) publishing information that has been withheld pursuant to the Individual Registrant Privacy Option ("IRPO"); (4) publishing historical versions of .nz WHOIS data through its various services; and (5) publishing .nz WHOIS data in bulk through its various services.

## II.    STATEMENT OF FACTS

### A.    Domain Name Background and Terminology

This case involves technical and administrative aspects of the Internet and website registration. As such, this motion begins with a brief overview in the relevant terminology, using DNCL's own website as an illustrative example.

To access DNCL's website, an Internet user would open a web browser and type "http://www.dnc.org.nz" into the navigation bar. This quoted series of characters is called a uniform resource locator, or URL. It is made up of several component parts that are relevant to understanding the present dispute. Carey Decl. ¶ 8.

DNCL'S MOTION FOR PRELIMINARY
INJUNCTION (NO. 2:18-CV-874) – 2
39655561.8

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

First, the URL contains a "domain name," which is an easy-to-remember string of characters that serves as a convenient alternative to a numerical IP address (the string of numbers a server uses to route traffic on the Internet). In the URL "http://www.dnc.org.nz," the domain name is "dnc.org.nz." An Internet user who continues to browse on DNCL's website will be directed to different URLs—for example, "http://www.dnc.org.nz/irpo"—but the domain name for this new URL is still "dnc.org.nz." Domain names can also be found in email addresses. *Id.*

Second, the domain name itself is split up into multiple pieces. Each piece is separated by a period and is part of a hierarchical structure of domain name identifiers. The "top level" domain ("TLD") appears after the rightmost period; here, the ".nz" piece. Moreover, ".nz" is a particular *type* of TLD, known as a country code top-level domain (or "ccTLD"), because it indicates the country (here, New Zealand) that administers and sets policies regarding domain name registration for a given website. Next comes ".org," which is called a second-level domain. Second-level domains indicate the core purpose of a website. For example, a ".org.nz" website serves an organizational purpose. Finally, the "dnc" piece is called the domain "identifier," and is chosen by the individual or organization that registers and uses the domain name. *Id.* ¶ 9.

A nonprofit organization called the Internet Corporation for Assigned Names and Numbers ("ICANN") coordinates and maintains the Internet's domains, including domain names, ccTLDs, and TLDs. ICANN primarily operates by accrediting and imposing contractual obligations on organizations known as domain "registries" and "registrars." A domain registry manages TLDs and their infrastructure by developing policy frameworks, creating domain name extensions, and keeping the definitive register of domain names. A registrar issues licenses for domains on behalf of domain registries to the individuals or organizations who want to use them. Those individuals or organizations, in turn, are called "registrants." Hinnen Decl. at Ex. 12.

Registrars and registries are required by their contracts with ICANN to operate a service called WHOIS. This service allows users to search for a domain name to determine whether it is currently in use and, if so, to obtain basic information about the individual or organization that

DNCL'S MOTION FOR PRELIMINARY
INJUNCTION (NO. 2:18-CV-874) – 3

39655561.8

registered it. Specifically, it allows public access to "WHOIS information," which typically includes (1) information about the domain name (e.g., whether it is available or in use, the date it was registered or last modified, its status, and its expiration); (2) information about the registrar (e.g., its name and contact information); and (3) information about the registrant (e.g., the name and contact information of the organization or individual currently using the domain name). *Id.*

**B.      DNCL and the .nz WHOIS terms of use**

DNCL is a nonprofit entity based in New Zealand. It was created and appointed by the local ICANN-recognized registry, InternetNZ, as the sole authority for administration and management of .nz domain names on behalf of the people and businesses of New Zealand and other .nz registrants. DNCL's organizational mission is to develop, monitor, and oversee a competitive registrar market and to create a fair environment for the registration and management of .nz domain names. Its functions include authorizing registrars to sell .nz domain name licenses to the public, outlining the policies and conditions by which persons may register domain names, and regulating the use of the .nz domain name space. Carey Decl. ¶¶ 3-7.

The public can extract WHOIS data from the .nz register via three avenues: (1) the DNCL website; (2) the .nz Port 43 service; and (3) registrars who have special access to the Query Service via SRS xml or EPP xml lookups (these are authenticated requests made against registry systems which only authorized .nz registrars can use). Importantly, although nz WHOIS information is available through other sources like registrars or third-parties like DomainTools, those sources must ultimately use one of these three avenues. *Id.* ¶ 16.

When the results of a Query Service search are provided through DNCL's website or Port 43, the TOU are consistently displayed and inform users that they are authorized to use the .nz WHOIS service only if they comply with the requirements of the TOU. *Id.* ¶¶ 21-23.

The TOU have always broadly prohibited users from "[u]sing multiple WHOIS queries, or using the output of multiple WHOIS queries in conjunction with any other facility or service,

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

to enable or effect a download of part or all of the .nz Register." *Id*. at Ex. 6. But the TOU were

amended on June 26, 2016 to further clarify that users are prohibited from:

> Send[ing] high volume WHOIS queries with the effect of
> downloading part of or all of the .nz Register or collecting
> register data or records;

> Access[ing] the .nz Register in bulk through the WHOIS service
> (ie. where a user is able to access WHOIS data other than by
> sending individual queries to the database); . . .

> . . .

> Stor[ing] or compil[ing] WHOIS data to build up a secondary
> register of information;

> Publish[ing] historical or non-current versions of WHOIS data;
> and

> Publish[ing] any WHOIS data in bulk.

*Id*. at Ex. 5.

Over time, registrants in New Zealand and around the world have become increasingly

concerned about publication of their personal information—especially their personal contact

information—through WHOIS services. DNCL has responded to these concerns with a two-

pronged approach. First, on November 28, 2017, based on extensive public input and support,

DNCL launched the IRPO, which was required to be implemented by all authorized .nz registrars

on March 28, 2018. The IRPO offers privacy protection for individual registrants who do not

conduct "significant trade" using their.nz domain names by allowing them to withhold their

detailed personal information, specifically their phone number and address, from publicly

available .nz WHOIS records. The IRPO is optional, but over 11,000 domain names have been

enrolled so far (about 2% of *all* registrations—including ineligible ones), and DNCL expects that

number to increase significantly as the option becomes more widely known. *Id*. ¶¶ 24-41, 53, 54.

Second, ever since mid-April of this year, detailed information about .nz registrants is no

longer offered through Port 43. This avenue now provides only limited information about the

domain itself—for example, whether the domain has been licensed or is available for use. This

DNCL'S MOTION FOR PRELIMINARY
INJUNCTION (NO. 2:18-CV-874) – 5

39655561.8

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

drastic remedy is aimed to increase DNCL's control over access and use of .nz WHOIS

registrant information, and to better protect New Zealand citizens and their personal information.

Even more specifically, it is meant to ensure that only current .nz WHOIS information can be

accessed; and to prevent registrant details from being harvested in bulk. Notably, by combining

the IRPO with strict enforcement of the TOU, DNCL empowers many .nz registrants to withhold

their personal contact information altogether because the information is neither presently

available nor re-creatable through historical records held by third parties. *Id*. ¶¶ 19-20.

**C.    DomainTools and the present dispute.**

Defendant DomainTools is a Delaware limited liability company based in Seattle,

Washington. DomainTools compiles and stores bulk WHOIS information from registries around

the world and sells that information to individual and enterprise customers through its various

research tools. Among these tools are Whois History, which allows customers to access

historical WHOIS records stored in a DomainTools database; Domain Reports, which allows

customers to simultaneously access all information DomainTools maintains about a particular

domain—including both current and all historical WHOIS records; and Reverse Whois, which

allows customers to search across WHOIS records stored in a DomainTools database and

identify records matching certain keywords—including keywords that identify individual

registrants. *Id*. at Exs. 2-6. DomainTools provides all of these services with respect to .nz domain

names. In addition, DomainTools offers a "Whois Lookup" tool, which the public can use to

obtain information about a particular domain name, including the full WHOIS record. Notably,

although DomainTools does not appear to make any other changes to the WHOIS record

obtained from DNCL, it strips the TOU out of the WHOIS record before displaying it in

response to a search for a .nz domain. *Id*. at Exs. 7-8.

On November 2, 2017, DNCL sent a letter demanding that DomainTools cease and desist

violating the TOU and infringing upon registrants' privacy or face litigation for breach of

contract and violation of other laws. Although DNCL's letter set a response deadline of

November 15, 2017, DomainTools requested several extensions, in part to discuss the possibility of resolving this matter without litigation. On April 22, 2018, well after DomainTools sent its February 7, 2018 response letter, DomainTools made clear that it would not agree to a settlement that involved complying with the TOU and applicable laws. Hinnen Decl. at Exs. 13-14.

DNCL sent a final cease and desist letter on June 6, 2018, which revoked DomainTools's limited license to access the .nz WHOIS service. *Id.* at Ex. 15. When DomainTools continued to access and sell .nz WHOIS records in violation of the TOU and applicable law, DNCL filed the present lawsuit and this motion seeking preliminary injunctive relief.

## III.   ARGUMENT

### A.   DNCL is entitled to a preliminary injunction enjoining DomainTools's unlawful activities.

A party seeking a preliminary injunction "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). In this case, a preliminary injunction is both necessary and appropriate because (1) DNCL is likely to succeed on the merits of its claims; (2) DNCL is currently suffering and will continue to suffer irreparable harm in the form of damage to its reputation and goodwill and frustration of its organizational mission; (3) the balance of equities tips sharply in favor of DNCL; and (4) the public interest favors issuance of an injunction pending final resolution of this action.

### 1.   DNCL is likely to succeed on the merits of its claims.

The first *Winter* factor—likelihood of success on the merits—is generally considered the "most important." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (en banc). But a plaintiff may still obtain a preliminary injunction even when success on the merits is unlikely if

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

there are "serious questions going to the merits,"[1] "the 'balance of hardships tips *sharply* in the plaintiff's favor,' and the other two *Winter* factors are satisfied." *See All. For the Wild Rockies v. Pena*, 865 F.3d 1211, 1217 (9th Cir. 2017) (quoting *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013)).

As shown by even the limited evidence available without discovery, DNCL is likely to succeed on the merits of its claims or has at least raised serious questions concerning the merits.

      **a.**    **DNCL is likely to succeed on its claim that DomainTools breached DNCL's terms of use.**

A claim for breach of contract requires showing "[1] the contract imposes a duty, [2] the duty is breached, and [3] the breach proximately causes damage to the plaintiff." *Nw. Indep. Forest Mfrs. v. Dep't of Labor & Indus.*, 78 Wn. App. 707, 712 (1995).

*First*, DomainTools is bound by the duties imposed by the TOU. Whether there has been mutual assent to an online contract, including terms of use governing an online service, typically "depends on whether the user has actual or constructive knowledge of a website's terms and conditions," particularly where the user is not required to take affirmative action (such as a click) to agree to the terms. *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1176 (9th Cir. 2014) (quoting *Van Tassell v. United Mktg. Grp., LLC*, 795 F. Supp. 2d 770, 790 (N.D. Ill. 2011)). Courts "have consistently enforced . . . agreements where the user had actual notice of the agreement." *Id.* And even where a user does not have actual notice, online terms of use are generally enforced "when a user is encouraged by the design and content of the website and the agreement's webpage to examine the terms clearly available through hyperlinkage." *McKee v. Audible, Inc.*, No. CV 17-1941-GW(Ex), 2017 WL 4685039, at *7 (C.D. Cal. July 17, 2017) (quoting *Berkson v. Gogo LLC*, 97 F. Supp. 3d 359, 401 (E.D.N.Y. 2015)).

---

[1] "Serious questions" are questions that are "substantial, difficult and doubtful, as to make them a fair ground for litigation and thus more deliberative investigation." *Senate of Cal. v. Mosbacher*, 968 F.2d 974, 977-78 (9th Cir. 1992) (internal quotation marks and citation omitted).

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

Here, the TOU were contained in each and every response to the voluminous number of .nz WHOIS queries that DomainTools has performed (and continues to perform), proving that DomainTools had actual notice of the terms. Indeed, DomainTools takes efforts to strip the TOU *out* of the "raw" .nz WHOIS records that it displays in response to queries through its "Whois Lookup" tool. *See* Hinnen Decl. ¶¶ 7-8. Under these circumstances, it would defy credulity to believe that DomainTools did not have actual notice of the TOU governing its use of the .nz WHOIS service. That the TOU did not appear until after DomainTools submitted its query is of no moment because DomainTools has been "submitting numerous queries, each of which resulted in its receiving notice of the terms [DNCL] exacted," and because the correspondence between DNCL and DomainTools can leave no doubt that at least since November 2017 DomainTools "knew perfectly well what terms [DNCL] demanded." *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 401 (2d Cir. 2004).

**Second**, even the pre-discovery evidence shows that DomainTools has violated and is continuing to violate several of the TOU's prohibitions. Courts have recognized that entities that provide services online are entitled to set the terms of how others may permissibly use their services. *See, e.g.*, *Register.com*, 356 F.3d at 398-401 (holding that a registrar was entitled to enforce restrictions on the use of WHOIS data as provided in its contractual terms); *Ticketmaster L.L.C. v. RMG Techs., Inc.*, 507 F. Supp. 2d 1096, 1113 (C.D. Cal. 2007) (holding that a plaintiff was entitled to enforce restrictions on the use of automated devices to purchase tickets from its website); *Facebook, Inc. v. Power Ventures, Inc.*, No. C 08-5780 JF (RS), 2009 WL 1299698, at *5 (N.D. Cal. May 11, 2009) (recognizing that a website was entitled to prohibit scraping activities). This case is no different: DNCL is entitled to enforce the TOU that it specifically designed to implement policies supported by members of the New Zealand online community and to protect .nz registrants' privacy and safety.

DomainTools has been and is continuing to obtain and use .nz WHOIS data in a manner that violates at least four prohibitions in the TOU.

DNCL'S MOTION FOR PRELIMINARY INJUNCTION (NO. 2:18-CV-874) – 9

39655561.8

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1.      DomainTools violates the <u>prohibition against "Send[ing] high volume WHOIS queries with the effect of downloading part or all of the .nz Register or collecting register data or records" and "Access[ing] the .nz Register in bulk through the WHOIS service."</u> Carey Decl. at Ex. 5. The size and scope of DomainTools's internal database establishes that DomainTools *must have* violated these provisions. DomainTools's website indicates that it has database records pertaining to around 94% of registered .nz domains, which comports with DomainTools's claim that it has "the world's largest database of Whois . . . records." Hinnen Decl. at Exs. 10-11. Such an "unparalleled" secondary register could only be created through the use of high volume WHOIS queries. *Id*. at Ex. 1. Preliminary investigation also suggests that DomainTools takes steps to evade the technical protective measures that DNCL has established to prevent high volume queries and bulk harvesting of .nz WHOIS data—including by using a distributed network of IP addresses from all over the world. Carey Decl. ¶ 59. Indeed, DomainTools has developed means of circumventing DNCL's technical protective measures precisely so that it can submit high-volume queries and access the register in bulk in violation of the TOU.[2]

2.      DomainTools violates the <u>prohibition on "Stor[ing] or compil[ing] WHOIS data to build up a secondary register of information"</u> by creating its own database of .nz WHOIS information and relying on that database to facilitate its services. *Id*. at Ex. 5. A "register" is "an official list of the names of people, companies, etc.," while a database is a "compilation of information arranged in a systematic way and offering a means of finding specific elements it contains, often today by electronic means." *Register*, *Database*, Black's Law Dictionary (10th ed. 2014). A database that contains an official list of names and contact information is therefore also a register. On its website, DomainTools states that its services rely on "records . . . maintained in the DomainTools database." Hinnen Decl. at Ex. 2. Thus, by its own admission, DomainTools has compiled .nz WHOIS information in a secondary register.

---

[2] Similarly, DomainTools "[u]s[ed] multiple WHOIS queries, or us[ed] the output of multiple WHOIS queries . . . to enable or effect a download of part or all of the .nz Register," per the earlier TOU. *Id*. at Ex. 6.

DNCL'S MOTION FOR PRELIMINARY
INJUNCTION (NO. 2:18-CV-874) – 10

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

3.      DomainTools violates <u>the prohibition on "Publish[ing] historical or non-current</u> <u>versions of WHOIS data,"</u> Carey Decl. at Ex. 5, by providing the Whois History tool which, in its own words, "allows DomainTools's members access to historical Whois records" that "DomainTools has been tracking" since 1995, Hinnen Decl. at Ex 2. This unauthorized service allows any member of the public to obtain historical and non-current WHOIS data by becoming a DomainTools subscription member or ordering a Domain Report for $49. *Id*. at Ex 5.

4.      DomainTools violates <u>the prohibition on "Publish[ing] any WHOIS data in bulk"</u> by selling to its customers access to substantially all of the .nz WHOIS records that it has accumulated over the last twenty years and allowing them via its Reverse Whois service to search these records in bulk. Carey Decl. at Ex. 5. Neither the Whois History and Reverse Whois services would be possible if DomainTools had not submitted high-volume queries, downloaded all or a substantial portion of the register, compiled a secondary register, and published in bulk that register of non-current versions of WHOIS data to customers so that customers could run tools like Whois History and Reverse Whois against it. Carey Decl. ¶ 59.

*Third*, DomainTools's conduct proximately causes ongoing and irreparable harm to DNCL. As explained in greater detail below, DomainTools is harming DNCL's reputation and goodwill by providing services that undermine the measures .nz registrants have requested and DNCL has implemented to control dissemination of personal WHOIS information and protect the privacy of .nz registrants. DomainTools is also diverting internal resources, and thus frustrating DNCL's organizational mission. For example, DNCL's engineers are forced to spend time trying to detect and prevent DomainTools's unauthorized access to and use of WHOIS services when they could otherwise spend that time serving .nz registrants and improving the DNCL website. Finally, this irreparable harm is in addition to the ongoing harm to the .nz WHOIS service that is caused by DomainTools's repetitive queries consuming a significant portion of the capacity of the .nz WHOIS computer systems. *Id*. ¶¶ 61-73.

*****

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

For these reasons, DNCL is likely to succeed on its claim that DomainTools is breaching the TOU by (1) sending automated, high-volume WHOIS queries and accessing the .nz Register in bulk; (2) storing and compiling .nz WHOIS data in its own database; (3) publishing information that has been withheld pursuant to the IRPO; (4) publishing historical versions of .nz WHOIS data; and (5) publishing .nz WHOIS data in bulk.

### b.   DNCL is likely to succeed on its claim that DomainTools violated the Computer Fraud and Abuse Act.

A private party may bring a claim against another private party under the Computer Fraud and Abuse Act ("CFAA") if the plaintiff has "suffer[ed] damage or loss" from the violation aggregating to at least $5,000 in value, and the defendant has "intentionally access[ed] a computer without authorization or exceeds authorized access and thereby obtain[ed] . . . information from any protected computer." 18 U.S.C. §§ 1030(a)(2), 1030(g). This language "target[s] the unauthorized procurement or alteration of information, not its misuse or misappropriation." *United States v. Nosal*, 676 F.3d 854, 863 (9th Cir. 2012) (quoting *Shamrock Foods Co. v. Gast*, 535 F. Supp. 2d 962, 965 (D. Ariz. 2008)).

Here, DNCL has never authorized DomainTools to access the .nz registry in the way it has—instead, DNCL has consistently forbidden DomainTools's conduct through its TOU. In November 2017, DNCL sent a cease and desist letter notifying DomainTools that it was accessing the registry without authorization and in violation of the express terms of the TOU. When DomainTools failed to heed this warning, on June 6, 2018, DNCL revoked even its limited license to access the registry. In other words, DomainTools's access to the registry in violation of the TOU has always been unauthorized; and now DomainTools is not authorized to access the registry at all. *See, e.g.*, *Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058, 1067 (9th Cir. 2016) ("[A] defendant can run afoul of the CFAA when . . . permission has been revoked explicitly."), *cert denied*, 138 S. Ct. 313 (2017); *see also Ticketmaster L.L.C. v. Prestige Entm't, Inc.*, __ F. Supp. 3d __, No. 2:17-CV-07232 ODW (JCx), 2018 WL 654410, at *6 (C.D. Cal. Jan. 31, 2018) (dismissing plaintiff's CFAA claims because plaintiff "ha[d] not shown that it

DNCL'S MOTION FOR PRELIMINARY
INJUNCTION (NO. 2:18-CV-874) – 12

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

39655561.8

rescinded permission from Defendants to use its website" so its claims were based entirely on the TOU). Yet DomainTools continues to access the registry without authorization—even going so far as to employ technical measures to evade IP-blocking (and IP-rate limiting). *Compare Craigslist Inc. v. 3Taps Inc.*, 942 F. Supp. 2d 962, 969-70 (N.D. Cal. 2013) (finding unauthorized access where defendants ignored cease and desist letters and evaded technological-blocking measures), *with hiQ Labs, Inc. v. LinkedIn Corp.*, 273 F. Supp. 3d 1099, 1113 (N.D. Cal. 2017) (justifying its conclusion that the CFAA may not be implicated on the grounds that a website could employ *effective* "anti-bot measures to prevent . . . harmful intrusions"), *appeal docketed*, No. 17-16783 (9th Cir. Sept. 6, 2017).

DomainTools's unlawful conduct has caused DNCL to suffer losses exceeding $5,000 over a one-year period. *See* 18 U.S.C. § 1030(e)(11) (defining "loss" to mean "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service"). DNCL estimates that its employees have spent in excess of 320 hours analyzing, investigating, and responding to DomainTools's actions over the past year. *Cf, e.g.*, *Facebook*, 844 F.3d at 1066 (finding plaintiff suffered "loss" due to the "many hours" employees spent "analyzing, investigating, and responding to [defendant]'s actions," even where there was no interruption in service). Because DNCL employees are paid, on average, around $139 USD per hour, this cost alone easily surpasses the statutory threshold—amounting to over $44,500. Carey Decl. ¶¶ 63-73. Additionally, each query to the .nz WHOIS servers costs computing power, disrupts network transmissions, and otherwise interferes with technical infrastructure.

### c.    DNCL is likely to succeed on its claim that DomainTools violated the Washington Unfair Competition Law.

"To prevail on a CPA action, the plaintiff must prove an '(1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in

his or her business or property; [and] (5) causation.'" *Klem v. Wash. Mut. Bank*, 176 Wn.2d 771, 782 (2013) (citation omitted). All these elements are met here.

**First**, harvesting the registration data of individual registrants in bulk and retaining it after the registrant has chosen to make that information private comprises an unfair act or practice. To determine whether a practice or act is "unfair," Washington courts are "guided by federal law in the area." *Klem*, 176 Wn.2d at 787. For example, courts have looked to the Federal Trade Commission for guidance and considered:

> (1) whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise—whether, in other words, it is within at least the penumbra of some common-law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers (or competitors or other businessmen).

*Magney v. Lincoln Mut. Sav. Bank*, 34 Wn. App. 45, 57 (1983) (quoting *Fed. Trade Comm'n v. Sperry & Hutchinson Co.*, 405 U.S. 233, 244 n.5 (1972)); *see also Klem*, 176 Wn.2d at 787 ("Current federal law suggests a 'practice is unfair [if it] causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits.'" (quoting 15 U.S.C. § 45(n))). DomainTools's practices are likely to cause substantial injury to consumers—including approximately 715 Washington consumers—by infringing their privacy rights and making publicly available information that those consumers have chosen to withhold through the IRPO setting. *See* Carey Decl. ¶ 88; *cf. Ehling v. Monmouth-Ocean Hosp. Serv. Corp.*, 961 F. Supp. 2d 659, 668 (D.N.J. 2013) ("Facebook wall posts that are configured to be private are, by definition, not accessible to the general public [and thus covered by the Stored Communications Act]. . . [because] the communicator took steps to keep [them] private."); *United States v. Devers*, No. 12-CR-50-JHP, 2012 WL 12540235, at *2 (N.D. Okla. Dec. 28, 2012) (acknowledging that Facebook users might have a reasonable expectation of privacy if they elect the most stringent privacy setting);

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

*see also Veridian Credit Union v. Eddie Bauer, LLC*, 295 F. Supp. 3d 1140, 1162 (W.D. Wash. 2017) (noting "the liberal construction the court applies to the CPA").[3]

*Second*, DomainTools engages in this unfair act or practice for the purpose of providing products and services to paying customers, and thus "in trade or commerce." *See* RCW 19.86.010(2) ("'Trade' and 'commerce' shall include the sale of assets or services, and any commerce directly or indirectly affecting the people of the state of Washington."); *Michael v. Mosquera-Lacy*, 165 Wn.2d 595, 602-03 (2009) ("The term 'trade' as used by the Consumer Protection Act includes . . . the entrepreneurial or commercial aspects of professional services." (quoting *Ramos v. Arnold,* 141 Wn. App. 11, 20 (2007)).

*Third*, the nature of this action means that "the public was integrally involved because of this essentially private dispute." *Nordstrom, Inc. v. Tampourlos*, 107 Wn.2d 735, 742-43 (1987) (holding that "confusion of the public, absent some unusual or unforeseen circumstances, will be sufficient to meet the public interest requirement of the [Washington] Consumer Protection Act"). This action is being brought by DNCL to, among other things, vindicate the policy developed and implemented based on the input of consumers of .nz registry services and the privacy and safety interests of individual registrants; it thus implicates the public interest.

*Fourth and Fifth*, DomainTools's conduct has proximately caused injury to DNCL in its business or property. As explained above, DomainTools is preventing DNCL from providing its services in accordance with the TOU and IRPO implemented in response to privacy and safety concerns raised by the people and businesses of New Zealand and other .nz registrants. DomainTools is also diverting employee time, disrupting network transmissions and damaging the .nz WHOIS technical infrastructure. Finally, as explained further below, DomainTools's

---

[3] Even if Washington consumers were not directly affected, Washington courts have recognized that a non-resident can bring a CPA claim in cases like this where "Washington State has a strong interest in enforcing its laws against its [own] businesses, lest the state 'become a harbor for businesses engaging in unscrupulous practices out of state.'" *Rajagopalan v. NoteWorld, LLC*, No. C11-05574BHS, 2012 WL 727075, at *5 (W.D. Wash. Mar. 6, 2012), *aff'd*, 718 F.3d 844 (9th Cir. 2013) (quoting *Schnall v. AT&T Wireless Servs. Inc.*, 171 Wn.2d 260, 287 (2011) (Sanders, J., dissenting)).

DNCL'S MOTION FOR PRELIMINARY
INJUNCTION (NO. 2:18-CV-874) – 15

39655561.8

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

activities are causing reputational harm and loss of goodwill to DNCL. *See Nordstrom*, 107

Wn.2d at 740 (noting that "loss of goodwill suffice[s]" to show injury to business or property).

### 2. DNCL is currently suffering and will continue to suffer irreparable harm without a preliminary injunction.

The second *Winter* factor requires a plaintiff to "demonstrate immediate threatened injury

as a prerequisite to preliminary injunctive relief." *Caribbean Marine Servs. Co. v. Baldrige*, 844

F.2d 668, 674 (9th Cir. 1988). "[E]conomic injury alone does not support a finding of irreparable

harm, because such injury can be remedied by a damage award." *Rent-A-Ctr., Inc. v. Canyon*

*Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991).

DNCL is currently suffering and will continue to suffer irreparable harm absent a

preliminary injunction. Specifically, DomainTools is harming DNCL's reputation and goodwill

in the New Zealand online community by disseminating the WHOIS information of .nz

registrants who elected to keep that information private, and by generally offering services in

violation of the TOU. Moreover, as discussed below, DomainTools is also undermining publicly

supported DNCL policies and diverting internal resources, thus frustrating DNCL's

organizational mission. None of these harms can be remedied by a damage award; they can only

be remedied by preliminary and, ultimately, permanent injunctive relief.

### a. DomainTools is causing irreparable harm to DNCL's reputation and goodwill by depriving IRPO registrants of the privacy protection DNCL promised them.

First, if DomainTools is permitted to continue its activities, DNCL will continue to face

irreparable harm to its reputation and goodwill because it will be unable to implement the policy

supported by .nz users and unable to deliver on the promises it made to IRPO registrants.

The Ninth Circuit has consistently recognized that "loss of control over business

reputation and damage to goodwill can constitute irreparable harm." *adidas Am., Inc. v. Skechers*

*USA, Inc.*, 890 F.3d 747, 756 (9th Cir. 2018) (alterations omitted) (quoting *Herb Reed Enters.,*

*LLC v. Fla. Entm't Mgmt., Inc.*, 736 F.3d 1239, 1250 (9th Cir. 2013)). It has also specifically

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone: 206.359.8000
Fax:  206.359.9000

recognized that a third party can damage an entity's reputation and goodwill by wrongfully interfering with its contractual obligations.

For example, in *Disney Enterprises, Inc. v. VidAngel, Inc.*, 869 F.3d 848 (9th Cir. 2017), the defendant operated an unauthorized online streaming service that censored movies and television shows. Disney and other plaintiffs sued under the Digital Millennium Copyright Act. The district court granted a preliminary injunction, and the Ninth Circuit affirmed, on the ground that "VidAngel's service undermine[d the Studios'] negotiating position . . . and also damage[d] goodwill with licensees, because it offer[ed] the Studios' works during negotiated 'exclusivity periods.'" *Id.* at 865 (internal quotation marks omitted). In other words, VidAngel irreparably harmed Disney's reputation by making it impossible for Disney to deliver on its promises.

A similar rationale was approved in *Ticketmaster L.L.C. v. RMG Techs., Inc.*, 507 F. Supp. 2d 1096 (C.D. Cal. 2007), where Ticketmaster alleged that its competitor, RMG, developed and used automated devices to access Ticketmaster's website and purchase tickets en masse. As here, this activity violated the website's terms of use and several state and federal laws, *see id.* at 1102, and, as in *Disney*, the district court found irreparable harm to reputation due to interference with contractual promises. Specifically, Ticketmaster's terms of use assured customers that they were all on a level playing field, and that tickets could not be purchased en masse by sophisticated entities. But RMG's activities in violation of the terms of use made it impossible for Ticketmaster to deliver on these promises. Ticketmaster showed "that it [was] suffering a loss of goodwill with the buying public [due to] a growing public perception that [Ticketmaster did] not provide the public with a fair opportunity to buy tickets due to automated purchases." *Id.* at 1114. The court relied on this showing of harm to preliminarily enjoin RMG from making automated purchases in violation of Ticketmaster's terms of use.

The situation is the same in this case. Over the past few years, Internet users in New Zealand have voiced intense concern about dissemination of WHOIS information—specifically citing privacy and safety concerns—and have demanded a change to .nz policies. *See* Carey

Decl. Ex. 23. DNCL responded by implementing the IRPO, which assures eligible registrants that their detailed contact information will be not be accessible absent a specific, justified request for that information. Yet registrants are not receiving that benefit. Instead, they are subjected to continued publication of their detailed contact information, which was collected by DomainTools en masse and compiled in violation of the TOU. And to make matters worse, rather than apologizing for its wrongful profiteering, DomainTools continues to boast about how it has unraveled the "cloak[] [of] privacy" offered by the IRPO. Hinnen Decl. at Ex. 9. In sum, like VidAngel and RMG, DomainTools is harming DNCL's reputation and goodwill by selling services that undermine the promises made to IRPO registrants.

>   **b.    DomainTools is causing DNCL to suffer irreparable harm to its reputation and goodwill because .nz registrants are not receiving the general protections promised in the TOU.**

In addition to undermining DNCL's ability to deliver on the specific promises made to IRPO registrants, DomainTools is undermining DNCL's ability to deliver on the general promises made to all registrants through the TOU.

DNCL has implicitly promised all .nz registrants (1) that only current WHOIS information will be made publicly available, and (2) that WHOIS information can only be accessed via specific, individualized queries; not via mass, systematic queries. These terms are material to registrants' decisions regarding whether to register their domain with .nz or with another registry.

Registrants are more likely to register a .nz website because (1) they are promised that WHOIS information will no longer be available once a domain becomes inactive, and (2) they are promised that sophisticated entities cannot collect WHOIS information en masse and compile it for commercial use. Conversely, if these assurances do not exist, then registrants are more likely to use another registry, such as ".com," which allows registrants to use a proxy service. (A proxy service allows registrants to use the contact information of a designated entity instead of their own.) These services are not allowed with respect to .nz domains, in part because DNCL

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

believes registrants are sufficiently protected by its TOU. As shown through public comments, if DomainTools continues to subvert DNCL's TOU, registrants may prefer to use other registers. *See* Carey Decl. ¶ 76(a) ("Had I known this, I would NOT have bought [a .nz] domain name."); *id.* ¶ 76(d) ("I have a .com website and they manage to keep our details private . . . .").

The TOU are thus material to .nz registrants. And because they are material, DNCL faces irreparable harm to its reputation and goodwill if DomainTools is allowed to continually undermine them and offer services based on information registrants have chosen to withhold.

The Second Circuit has affirmed preliminary injunctive relief in a remarkably similar situation. *See Register.com, Inc.*, 356 F.3d 393. Like DNCL, Register.com offered free WHOIS services. And like DNCL, its terms of use specifically prohibited "high volume, automated, electronic processes," and "[t]he compilation, repackaging, dissemination or other use of [WHOIS information]." *Id.* at 420 (Parker, J., draft opinion). Register.com filed suit against Verio for violating these provisions, and the trial court granted a preliminary injunction. *Id.* at 396. The Second Circuit affirmed, agreeing that Verio was bound by the terms of use and that Register.com would face irreparable harm if Verio were permitted to continue ignoring the above restrictions. The court cited both immediate, direct harm via "the loss of Register.com's relationships with customers and co-brand partners" due to Verio's violation of the various terms of use, and the possibility of future harm to server capacity if other service providers followed Verio's lead and submitted mass queries in violation of the terms of use. *See id.* at 404.

DNCL faces immediate and direct harm to its reputation and goodwill for similar reasons here. Moreover, DNCL faces the prospect of exacerbated harm in the future. If DomainTools continues its unauthorized access and use, then other Internet service providers may follow suit, and registrants will (correctly) conclude that DNCL has completely lost the ability to control access and use of the WHOIS information on its website.

The Ninth Circuit has affirmed preliminary injunctions based on much less severe reputational harm than this. For example, in *Regents of University of California v. American*

DNCL'S MOTION FOR PRELIMINARY
INJUNCTION (NO. 2:18-CV-874) – 19

39655561.8

*Broadcast Companies, Inc.*, 747 F.2d 511, 520 (9th Cir. 1984), it affirmed a trial court's

determination that the University of Nebraska and the University of Notre Dame could cause

irreparable harm to the University of Southern California ("USC") by refusing to allow

basketball games between these schools to be broadcast. The Ninth Circuit accepted that this

refusal could lead to severe reputational harm even though it only applied to basketball—as

opposed to other athletic programs; and even though it only applied to two universities—as

opposed to all of USC's competitors. *See id*. at 520. If a well-rounded institution like USC could

suffer a "palpable diminution in [its] national reputation" due to such a minor slight, then it goes

without saying that a single-mission entity like DNCL will suffer irreparable reputational harm if

DomainTools is permitted to undermine the TOU designed to protect .nz registrants.

> ### c.   DomainTools is causing DNCL irreparable harm because it will be forced to divert internal resources away from its organizational mission to police and prevent DomainTools's unauthorized activity.

In addition to affirming preliminary injunctive relief based on reputational harm, the

Ninth Circuit has also affirmed relief on the ground that a nonprofit organization is irreparably

harmed when its "ability to carry out [its] mission[]" is "impaired." *See Valle del Sol Inc. v.

Whiting*, 732 F.3d 1006, 1018 (9th Cir. 2013).

In *Valle del Sol*, a church, its pastor, and its staff members sued the State of Arizona,

arguing that a state statute—which prohibited illegally concealing, harboring, shielding, or

transporting an alien in Arizona in furtherance of the alien's unlawful presence in the United

States—was unconstitutionally vague. The trial court and the Ninth Circuit agreed that the

plaintiffs were likely to succeed on the merits of this claim and would suffer irreparable harm

absent an injunction. Among other things, the church would lose volunteers who feared

prosecution under the statute and be "required to divert resources to educate its members [about

the statute] and counteract this frustration of its mission." *Id*. at 1018.

Similarly here, DNCL has been "perceptibly impaired" in its "ability to carry out [its]

mission[]," *id*., because it has been forced to allocate organizational time and leadership to try to

stay one step ahead of DomainTools. Specifically, DNCL has been forced to modify the Port 43 command line query, refine its rate-limiting measures, send demand letters, and travel to Seattle to meet with DomainTools. Carey Decl. ¶¶ 19, 71, 93-94. All this time and energy would be better spent carrying out DNCL's organizational mission—which is to administer and manage .nz domain names and serve New Zealand Internet users. Once again, DNCL faces the prospect of continuing irreparable harm absent a preliminary injunction.

### 3. The balance of equities tips sharply towards DNCL.

The third *Winter* factor requires this court to "balance the interests of all parties and weigh the damage to each." *See L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1203 (9th Cir. 1980). Ordinarily, the party seeking an injunction need only show the injunction would "do more good than harm." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1133 (9th Cir. 2011). But where a party has only shown serious questions concerning the merits of a claim, under the sliding scale variant of the *Winter* standard, the party must show the "balance of hardships tips sharply in [its] favor." *Pena*, 865 F.3d at 1217 (emphasis omitted).

DNCL meets either standard. As demonstrated above, DNCL faces continuing irreparable harm to its reputation, goodwill, and organizational mission because .nz individual registrants are being deprived of the data protection that they requested and have been promised. The severity of this harm has been made clear above.

Conversely, DomainTools will suffer either no harm or very limited pecuniary harm. DNCL has only asked this Court to enjoin DomainTools from violating the TOU by offering the offending services for .nz domains.[4] If DNCL succeeds in its claims, DomainTools is not harmed because it had no right to offer these services in the first place. *See Triad Sys. Corp. v. Se.*

---

[4] In its complaint, DNCL also demands that DomainTools delete all historical .nz WHOIS records obtained and stored in violation of the .nz WHOIS TOU. But for now, a cessation of continuing activities will prevent further harm pending a final judgment. *See Perfect 10, Inc. v. Google, Inc.*, 653 F.3d 976, 981-82 (9th Cir. 2011).

DNCL'S MOTION FOR PRELIMINARY
INJUNCTION (NO. 2:18-CV-874) – 21
39655561.8

*Express Co.*, 64 F.3d 1330, 1338 (9th Cir. 1995) ("[L]ost profits from an activity which has been shown likely to be [unlawful] . . . merit[] little equitable consideration.").

But even if DomainTools ultimately prevails, it would suffer very limited harm. Specifically, it would suffer only the loss of profits that it would have otherwise earned by offering the offending services with respect to .nz domains. To put the effect in perspective— DomainTools maintains more than 200 times as many records about *commercial* domain names hosted on a United States register as about *any* domain names hosted on the New Zealand register. Hinnen Decl. at Ex. 11. The effect of an injunction on DomainTools's global domain services would therefore be largely imperceptible. And more significantly, unlike the harm suffered by DNCL, such harm could be easily remedied after the fact through a monetary award.

The balance of equities thus tips—sharply or otherwise—in DNCL's favor.

### 4.     A preliminary injunction is in the public interest.

The final *Winter* factor instructs that, if preliminary relief would "reach[] beyond the parties, carrying with it a potential for public consequences," *Boardman v. Pac. Seafood Grp.*, 822 F.3d 1011, 1023–24 (9th Cir. 2016) (quoting *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1139 (9th Cir. 2009)), then the court must consider whether preliminary relief is in the public interest. Here, preliminary relief would both reach beyond the parties and be in the public interest.

Most obviously, preliminary relief would affect non-party .nz registrants and DomainTools customers. The interests of these third parties largely mirror those of the parties. On the one hand, if a preliminary injunction is not granted, .nz registrants face continued unauthorized access and use of their personal WHOIS information. Surveys conducted for the New Zealand Office of Privacy Commissioner have confirmed that many New Zealand residents (who are the majority of .nz registrants) are concerned about unfettered online dissemination of their personal information—especially their contact information. Carey Decl. at Ex. 23.

On the other hand, if a preliminary injunction is granted, DomainTools's customers will be unable to purchase the offending services with respect to .nz domains. As discussed above,

DNCL'S MOTION FOR PRELIMINARY
INJUNCTION (NO. 2:18-CV-874) – 22
39655561.8

this outcome will not adversely affect their interests at all if DNCL succeeds in the underlying litigation—as is likely. Moreover, even in the unlikely event that DNCL fails, a wrongful injunction would amount to little more than an apparent inconvenience for DomainTools's customers. Such customers could still obtain current .nz WHOIS information (minus information withheld pursuant to the IRPO) through DNCL's website and, when appropriate, historical and withheld .nz WHOIS information by making a request to DNCL. *Id*. ¶¶ 42-51. The information regarding .nz registrants available through DNCL is more current and accurate than that available through DomainTools, which continues to publish historical (and therefore potentially outdated) information. DomainTools's customers, including law enforcement and other public interest organizations, will receive more accurate information (for free and without violating the TOU) through DNCL, which will lead to more fruitful investigations and fewer spurious claims based on outdated and inaccurate information against current and former .nz registrants.

But preliminary relief would reach even further beyond the parties: The decision to grant or deny a preliminary injunction affects the global Internet community.

This action has been brought at a pivotal moment in public discourse. The world has changed drastically over the last twenty years since WHOIS information first became available, and the public has grown increasingly concerned about unfettered access to private personal information online. The European Union passed the European General Data Protection Regulation ("GDPR") to address these very concerns—broadly prohibiting companies from publishing online identifying information collected from EU citizens in EU member states absent prior express consent. Many registries have in turn responded to the GDPR by revising their terms of use to limit access to personal WHOIS information. Hinnen Decl. ¶ 12, Ex. 11.

Similarly, although ICANN has historically required all accredited registries and registrars to make WHOIS information publicly available, it has responded to the shift in public opinion by taking steps to increase control over the public disclosure of WHOIS information. Specifically, ICANN has adopted an interim "tiered access" model, which would restrict access

DNCL'S MOTION FOR PRELIMINARY
INJUNCTION (NO. 2:18-CV-874) – 23

39655561.8

to detailed WHOIS information to those approved through a special accreditation process. *Id*. In other words, ICANN hopes to essentially press the "reset" button on the public availability of personal WHOIS information and implement a regime very like that currently offered by DNCL.

DomainTools's offending services could vitiate these efforts. If courts are not willing to bind DomainTools to the TOU to which it agreed, then DomainTools can simply rely on its secondary registry to recreate and publicize records that ICANN and other Internet actors are working to protect. Ironically, DomainTools would reap the benefits of its unlawful conduct, becoming a rare or sole source of private registrant information that registrants and registries have chosen not to make publicly available. DNCL is therefore not the only organization that would benefit from a preliminary injunction here. Instead, the entire global Internet community benefits from an order holding DomainTools to its contractual obligations and honoring the choice .nz registrants have made to protect their private information.

## B.   No bond should be required.

Federal Rule of Civil Procedure 65(c) requires, as a condition to issuance of a preliminary injunction, that the Court require the applicant to provide security "in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Where, as here, the plaintiff is likely to prevail on the merits and there is no likelihood of harm to the defendant from issuance of a preliminary injunction, the Court has broad discretion to require no bond or other security. *Cal. ex rel. Van De Kamp v. Tahoe Reg'l Planning Agency*, 766 F.2d 1319, 1325-26 (9th Cir. 1985).

As demonstrated above, DNCL is likely to succeed on its claims due to DomainTools's continued and brazen violation of its TOU. DNCL also faces the prospect of irreparable harm to its reputation, goodwill, and nonprofit mission if preliminary relief is not granted; while if it is granted, DomainTools faces, at most, only minor loss of profits. In light of this sharply tipped balance of equities and the strong public interest in holding DomainTools to its contractual obligations to safeguard personal .nz WHOIS information, no bond should be required.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
33
34
35
36
37
38
39
40
41
42
43
44
45
46
47
48
49
50
51

## IV.    CONCLUSION

For the foregoing reasons, DNCL respectfully requests that its motion for a preliminary

injunction be granted.

RESPECTFULLY SUBMITTED this 15th day of June, 2018.

s/ Todd M. Hinnen
Todd M. Hinnen, WSBA No. 27176
Erin K. Earl, WSBA No. 49341
Anna Mouw Thompson, WSBA No. 52418
Attorneys for Plaintiff Domain Name
Commission Limited
**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Telephone:  206.359.8000
Facsimile:  206.359.9000
Email:    THinnen@perkinscoie.com
            EEarl@perkinscoie.com
            AnnaThompson@perkinscoie.com

Attorneys for Plaintiff
Domain Name Commission Limited

DNCL'S MOTION FOR PRELIMINARY
INJUNCTION (NO. 2:18-CV-874) – 25
39655561.8

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

### CERTIFICATE OF SERVICE

I certify under penalty of perjury that on June 15, 2018, I electronically filed the

foregoing PLAINTIFF DOMAIN NAME COMMISSION LIMITED'S MOTION FOR

PRELIMINARY INJUNCTION and served the same by the method(s) indicated below.

| | |
|---|---|
| Jacob Heath<br>Aravind Swaminathan<br>Orrick, Herrington & Sutcliffe, LLP<br>701 5th Ave<br>Suite 5600<br>Seattle, WA 98104<br><br>Attorneys for Defendant DomainTools, LLC | __X__  Via hand delivery<br>____  Via U.S. Mail, 1st Class, Postage Prepaid<br>____  Via Overnight Delivery<br>____  Via Facsimile<br>____  Via Email<br>____  Other: _____ |

DATED this 15th day of June, 2018.

s/ Todd M. Hinnen
Todd M. Hinnen, WSBA No. 27176
Attorneys for Domain Name Commission
Limited
**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Telephone:  206.359.8000
Facsimile:  206.359.9000
E-mail: THinnen@perkinscoie.com

CERTIFICATE OF SERVICE
(NO. 2:18-CV-874)  – 1

139655561.8